### DEBONIS v DEBONIS

Ohio Appeals, 7th Dist, Mahoning Co

Nos 1661 & 1662. Decided March 11, 1932

Kaufman & Neiman, Youngstown, for plaintiff in error.

John Willo for defendant in error.

ROBERTS, J.

As indicating the relations between the parties and their various appearances in the Court of Common Pleas, and the matters shown in the journal entries out of which the issues arose, reference will be made to some of the journal entries. At the May term, 1930, May 17th, the plaintiff filed her petition for divorce and alimony. At the May term, 1930, to-wit: July 2nd, the cause came on to be heard upon the application of the plaintiff for alimony pendente lite; the court finding the application to be well taken, sustains the same and awarded alimony in the sum of $75.00 per month, to be paid fortnightly to the plaintiff, and again at the May term, 1930, to-wit: August 7th, charges were filed by the plaintiff against the defendant, alleging that he wilfully and purposely disobeyed the orders of the court in not paying the alimony awarded by the court. A rule for contempt then issued in the order of the court, and on August 21st, written charges having been filed with the clerk, alleging the disobedience of the defendant in failing to pay the alimony, notice was given to the defendant directing him to appear before the court on August 25th, and show cause why he should not be punished as for contempt. On the 20th day of September these charges were heard and the court found that it appearing that the defendant, Dominic Debonis, although well able to, does wilfully and purposely, in contempt of this court, and still refuses to comply with said order. Then another rule seems to have been issued to show cause why he was not in contempt, and on the 1st day of December the cause came on again for hearing on the evidence, argument of counsel in the action for divorce. The court awarded the plaintiff a divorce on the ag-

gressions of the husband and for extreme cruelty on his part, gave the wife the custody of the three children, made provisions for alimony, and again awarded $75.00 per month for the maintenance of the children. January 8, 1931, written charges were again filed aganst the defendant, alleging that he was in contempt of court in failing to pay the allowance made for the children. This came on for hearing on the 15th day of January, 1931. The rule was allowed to show cause, and on March 31st, the defendant was found guilty of contempt of court in failing and refusing to pay this allowance, and the defendant was sentenced to imprisonment in the county jail. June 15th charges were again preferred against him for neglecting to pay this award for the support of the children. Warrant was issued for the arrest of the defendant. Ten days was granted to comply with the order, and on September 30, 1931, a motion of contempt was heard. October 9th, 1931, the defendant was again found guilty of contempt, and again he was under charges and hearing on the 21st of October, 1931, by reason of his delinquency in payment. The court, on October 31st, 1931, held that the defendant was guilty of contempt in failure to pay the alimony and he was again sentenced to imprisonment in the county jail, and error was prosecuted in the second action for this holding of the court.

On September 30th, a motion for the modification was under consideration, and the court held that the defendant did not come into court with clean hands, and refused to hear evidence on the motion to modify and overruled the motion to modify, it being said, in part, in the journal entry:

"Upon order the motion of the plaintiff requesting the court to deny said motion and to refuse to hear evidence thereunder, because the defendant, Dominic Debonis, is in arrears in the sum of approximately $800.00 relative to said alimony payments, and because said defendant was guilty of disobedience of the former orders of this court, and because the defendant does not come into court with clean hands, the court, after gaining an admission from counsel for defendant that said defendant is in arrears in a substantial sum relative to said alimony payments, and after taking judicial notice of former hearings and former entries made in the premises, and being fully advised in the premises, finds that said motion of the plaintiff is well taken, and the defendant, although well able to comply with the former orders of this court, has wilfully and purposely failed and neglected so to do, and therefore sustains the same."

It thus becomes apparent that from the 17th day of May, 1930, down through that year and the following year, these parties were repeatedly in the Court of Domestic Relations, in the divorce case, in the matter of the allowance of alimony and an award for the support of the children, that the defendant was practically constantly subject to charges of contempt in not paying alimony; during all this period of practically two years the parties were many times in court and presumably the court became very familiar with the facts in the case, not only in the action for divorce but in the hearing in the last contempt proceeding the evidence offered was taken by a stenographer and is produced here in a bill of exceptions, and furthermore, the entries made from time to time while this matter was under consideration by the court, as a result of these numerous charges and hearings, while the evidence was not set forth, it is apparent that evidence was heard during these numerous occasions in which these parties were before the court.

Counsel for the defendant in error have cited respectable authorities upon the proposition that a party who comes into a court of equity must come with clean hands, and authorities have been cited and quoted from where courts have refused to hear a motion for a modification of alimony where the defendant was in arrears in the payment of alimony that had been awarded, and that he should pay. This court would not feel disposed to follow those decisions as a general proposition where there was nothing to indicate a familiarity on the part of the court with the financial and physical condition of the defendant as indicative of his ability or inability to pay the alimony. It would seem to be a proper deduction that a person is not in contempt of court in not doing that which is practically impossible to do; for instance, if a defendant be without property, dependent upon his physical labor to earn money for his support and for the award made by the court to pay, or meets with an accident and becomes ill and has not the ability or power to pay, he should not be held in contempt, and it may be conceivable that this issue may arise in any court where the presiding judge has no knowledge, present or previous, of the ability of the defendant who is under charges to respond. Under such a circumstance we would not think that it would be just or proper that this rule should be invoked, and especially not until it had developed as a matter of proof and knowledge on the part of the court, that the defendant had ability to pay and wilfully refused to do so.

We have this proposition in the instant case, however, as has been suggested, and as appears from numerous entries on the court docket, to which reference has been made, that the judge who heard this case had become presumably very familiar with it, the relations of the parties, of the ability of the defendant to respond to the necessities of the wife in the support of these children. This question was a matter which had been before the court many times. The evidence discloses, as taken in the contempt proceeding, that at that time, or shortly before, the defendant had a bank deposit, which had been made in the name of a fictitious person called "Joe Bruno"; that he also at this time had upon his person the sum of $475.00 in money. After the divorce he married a young woman by the name of Manilla and assumed new and added marital duties. The testimony was to the effect that he really did not want to marry this girl; that he had no ability to support her; that he had been arrested for violation of the Federal Laws, and, as I recall, convicted, and the case is now perhaps pending in a higher court on error proceedings. His present mother-in-law, Minnie Manilla, discovered that her daughter was desperately in love with this man, who professed his inability to support her, and she offered to support him, and also testifies that she offered to do something in the way of providing for the children of the first marriage. Her testimony and that of the defendant is to the effect that he is out of work, and there is some testimony of inability to work by the physician, who says that his condition is not such that he ought to work at manual labor. Nevertheless, when interrogated upon the proposition of his previous employment, that of the operation of a still at nights, the doctor says he thinks this physical exertion would be good for him. The evidence is not understood to be disputed that this man for a long period of time had been a bootlegger and that so far as is indicated by the testimony was his vocation. The testimony given by the defendant and by his mother-in-law with regard to this money, is considerably weakened by the fact that on cross examination their statements are very much modified. After denying that this deposit in the bank of $3500 was made by him, it is finally admitted that it was his deposit. However, the somewhat fantastic story is related that it became necessary, by reason of his troubles with the federal authorities to raise money, and also primarily in view of the fact that his mother in law wanted to provide a home for him and his present wife, that she furnished $2500 and a brother of defendant furnished $1,000, and this was the $3500 deposited in the bank, and this, it is undertaken to claim, has been dissipated or expended in some way unexplained in the defense of these criminal actions against the defendant. Both the defendant and his mother in law do not claim to have made any inquiry or endeavor to find out what became of the money, but as a general proposition assert that it has gone into other hands, they don't know where, as a result of this litigation.

These matters are spoken of simply in corroboration of the conclusion reached by the court as to the ability of Debonis to respond to the order of the court for the payment of alimony. We have, perhaps it may be said, more confidence in the integrity and good judgment and knowledge of these matters, of the trial court than we have of the inconsistent, disputed and somewhat unreasonable testimony of the defendant and those who testify for him.

The conclusion is therefore reached that the court was not in error in refusing to hear testimony upon the ability of this man to respond to payment of the alimony with which he was charged, when the court was already fully advised of the facts in this case and due to his own satisfaction that Debonis could pay had he been disposed to do so, and this also applies to the other proposition, the second error proceeding. No claim is made that he had complied, except to a limited extent, in the payment, and the court finding him to be able to pay, and on that proposition went exhaustively again into the evidence, as is shown by the bill of exceptions in this case, and reached the same conclusion again, that the defendant was amply able to have paid and wilfully and without excuse, refused to do so, so that there was no error in this regard in either case and the judgment of the Court of Common Pleas is affirmed in both cases.

FARR and POLLOCK, JJ, concur.